The State *ex rel.* The Attorney General v. Mead.

1. **Constitutional Law**: SUBJECT AND TITLE OF ACT: ELECTION LAW. If all the parts of an act are germane to the subject indicated by the title, the act does not violate section 28, article 4 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title." A provision in an act "concerning popular elections," authorizing the governor to fill vacancies in elective offices is germane to the general subject and is valid. R. S. 1879, § 5527.

2. **Constitutional Provisions, Mandatory, Directory**: LEGISLATIVE PROCEEDINGS: JOURNALS OF THE LEGISLATURE. The first clause of section 37, article 4 of the constitution: "No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session," is mandatory; the remaining clauses of the section are directory.

An act is not to be held void because the journals of the Legislature fail to show a strict observance of the formalities prescribed by these clauses, as, for instance, that the presiding officer suspended all other

The State ex rel. The Attorney General v. Mead.

| 71   | 266  |
|------|------|
| 170  | ¹105 |
| 171  | ¹643 |
| h171 | ¹644 |
| 172  | ¹252 |
| 174  | ¹603 |

business and declared that such bill would then be read, and that, if no objections were made, he would sign the same, to the end that it might become a law, nor that the bill was immediately sent to the other house.

3.  **Legislative Proceedings and Journals:** BILLS TO BE SIGNED IN OPEN SESSION.  It is not essential to the validity of an act that the journals of the Legislature should expressly state that the signing by the presiding officers of the two houses was done in "open session."

4.  ——— : ———: PRESENTING BILLS TO THE GOVERNOR.  It is not essential to the validity of an act that the journals of the Legislature should show that the requirements of section 38, article 4 of the constitution, have been complied with by the secretary of the senate or the clerk of the house of representatives, one or the other of whom (according as the bill originated in the senate or house) is required by that section to present every bill as soon as it has been signed by the presiding officers of both houses, and on the same day, in person, to the governor.  The requirements of that section are directory only.

5.  **Section 5527** of the Revised Statutes is not subject to any constitutional objection.

*Original Quo Warranto.*  :

JUDGMENT OF OUSTER AWARDED.

The respondent, Mead, having been appointed by the county court of Livingston county to fill a vacancy in the office of recorder of deeds of that county, the attorney general instituted this proceeding to vacate the appointment.

*J. L. Smith,* Attorney-General, for the State.

*Henry Flanagan* for respondent.

SHERWOOD, C. J.—The question for determination in this case is whether the law under which the respondent claims his appointment was repealed, the former law (G. S., p. 162, § 28) providing that the county court should temporarily fill a vacancy in the office of recorder of deeds, while the law relied on by relator, and which is alleged to

have gone into effect on the 1st day of November, 1879, provides that such and similar vacancies " shall be filled by appointment by the governor." (Rev. Stat. 1879, § 5527, p. 1085.) This law undoubtedly accomplished the repeal of the former one, if possessed of constitutional validity. Three objections are, however, taken on the score of lack of conformity to constitutional requirements. *First.* That the recent statute, the title of which is, " An act to amend and revise chapter 2, title 2, of the General Statutes of Missouri concerning popular elections," violates section 28 of article 4 of the present constitution, which requires that " No bill shall contain more than one subject, which shall be clearly expressed in its title." *Second.* That in the passage of the act in question, section 37 of article 4 of the constitution was violated. *Third.* That section 38 of the same article was also violated. We will consider in the order mentioned the objections urged.

1.  The first would seem to require but little discussion, since similar objections have heretofore received discussion by us. *State ex rel. v. Lafayette Co.,* 41 Mo. 39 ; *City of St. Louis v. Tiefel,* 42 Mo. 578; *City of Hannibal v. The County of Marion,* 69 Mo. 571. The principle to be readily deduced from these cases and the authorities cited, is, that if any matter contained in a statute be objected to, as not referred to in the title, or that the bill contains more than one subject, the objection urged will not be held well taken, if the clause or section to which objection is raised be germane to the subject treated of in the title. Applying this recognized principle in the present instance, section 5527, *supra,* will be found in entire harmony with it, for there is an obvious connection and congruity between the idea expressed in the title, " Concerning popular elections," and that of providing for filling, by gubernatorial appointment, vacancies temporarily occurring in offices filled, in the first instance, by the ordinary machinery of an election, and to be so filled again when the temporary exigency which occasions

*1. CONSTITUTIONAL LAW: subject and title of act: election law.*

the temporary appointment has, with the cause in which it had its origin, ceased to exist. This point must, therefore, be ruled against respondent.

II. Next for consideration is whether the statute now being discussed met, in its passage, with such conformity to the provisions of section 37 of article 4 of the constitution, as enables us to say, that section has not been infringed in the passage of that statute.

2. CONSTITUTIONAL PROVISIONS, MANDATORY, DIRECTORY: legislative proceedings: journal of legislature.

Section 37 is as follows: " No bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session; and before such officer shall affix his signature to any bill, he shall suspend all other business, declare that such bill will now be read, and that, if no objections be made, he will sign the same, to the end that it may become a law. The bill shall then be read at length, and if no objections be made, he shall, in presence of the house in open session, and before any other business is entertained, affix his signature, which fact shall be noted on the journal, and the bill immediately sent to the other house. When it reaches the other house, the presiding officer thereof shall immediately suspend all other business, announce the reception of the bill, and the same proceedings shall thereupon be observed in every respect as in the house in which it was first signed. If in either house any member shall object that any substitution, omission or insertion has occurred, so that the bill proposed to be signed is not the same in substance and form as when considered and passed by the house, or that any particular clause of this article of the constitution has been violated in its passage, such objection shall be passed upon by the house, and if sustained, the presiding officer shall withhold his signature; but if such objection shall not be sustained, then any five members may embody the same, over their signatures, in a written protest, under oath, against the signing of the bill. Said protest, when offered in the house, shall be noted upon the journal, and

the original shall be annexed to the bill to be considered by the governor in connection therewith."

At the time of the delivery of the opinion in the case of the *Pacific Railroad v. The Governor*, 23 Mo. 353, which held that the validity of an enrolled statute, authenticated in conformity with law, could not be impeached by the journals showing non-compliance with constitutional forms in the reconsideration of a bill, the only provision in the constitution in reference to the authentication of a bill passed by both houses then was that it should "be signed by the speaker of the house of representatives and by the president of the senate." Art. 3, § 21, Const. 1820. But upon the adoption of the constitution of 1865, a prohibitory section similar to section 31, *infra*, was added to section 21 just mentioned, in these words: "No bill shall be passed unless by the assent of a majority of all the members elected to each branch of the general assembly; and the question upon the final passage shall be taken immediately upon the last reading, and the yeas and nays shall be taken thereon and entered upon the journal." (Const. 1865, Art. 4, § 24). As if with the advance toward a "higher civilization" greater precautions were requisite in legislative matters than in the early days of our State's history.

Respondent relies upon the journals to make out his case. The intimation is given in *Bradley v. West*, 60 Mo. 33, that the legislative journals might, in proper circumstances, be received in evidence to show that a law had not been passed in accordance with the constitutional requirements. The great current of authority is certainly in favor of such evidence for such a purpose, and that the journals may disclose such a state of facts as will warrant the courts in holding a statute void. Cooley Const. Lim., 135, 136, and cases cited. We have no question but that this view is the correct one. Taking this, then, as the starting point, let us see if, upon examination, the journals will support or overthrow the statute. In order satisfactorily to determine

this, it first becomes necessary to inquire whether section 37 is mandatory or directory, for if the latter, the omission of the journals in certain particulars would not be a fatal one.

We are convinced that the initial clause of the section that "no bill shall become a law until the same shall have been signed by the presiding officer of each of the two houses in open session," is mandatory, though it is quite evident that the mandate of the constitution would be obeyed, so far as concerns proper authentication of the bill, when it receives the signature of the respective presiding officers in open session. But we do not regard the other clauses of the section under review as mandatory; for it is to be observed that those clauses do not declare that "no bill shall become a law," if the presiding officers or the members fail to perform the duties which the residue of the section imposes, but the only penalty directly expressed is that contained in the initial clause just noted. No inference is, however, to be drawn from this, that the residue of the section is not to be obeyed, for certainly the duties it enjoins are clearly set forth. The framers of the constitution were evidently of the opinion that they might safely intrust the supervision of the details specified in the remaining clauses of the section to the members of the general assembly, or else they would have never ordained that any member might by his objection impede the progress of legislation and arrest the signature of the presiding officer to the pending bill on the ground that some unwarranted omission, substitution or insertion had occurred, or that some provision of the constitution had been violated. *Herein lies,* in our opinion, the only *constitutional corrective* for a failure to observe the provisions of the remaining clauses of the section under discussion and to yield a ready obedience to them.

If it be said that this construction leaves it optional with the Legislature whether they shall comply with the explicit commands of the other clauses of the section, the

obvious reply is, that *confidence must be reposed somewhere;* that the very nature of republican government demands and presupposes it; that if the trust thus reposed is not well founded; that if integrity is not to be found among the legislative representatives of the people, it would be but an easy matter by a *simulated observance of constitutional forms in the registry of falsehoods upon the journals,* to evade and defeat the most rigid provisions of the organic law that the wit of man is capable to devise.

As no objection or protest is " noted upon the journal" of either branch of the general assembly, the only natural and reasonable conclusion for us to reach is that benign conclusion of the law itself, sanctioned by the wisdom of ages, which presumes in favor of *right,* and not in favor of *wrong.* Similar presumptions are daily indulged in respecting *judicial* proceedings, and no reason occurs why a similar liberality of inference should not obtain in regard to *legislative* proceedings in many instances. Viewing the subject in this light, we regard it unimportant that the journals of the respective houses do not disclose that strict observance of formality which should properly attend the passage of a bill through its various legislative stages, as, for instance, that the presiding officer suspended all other business and declared that such bill would then be read, and that, if no objections were made, he would sign the same, to the end that it might become a law, nor that the bill was immediately sent to the other house. Counsel for respondent fails to observe that section 37, while requiring these things to be done, and these forms to be observed, nowhere requires that they be noted on the journal; the only facts requisite to be noted there, as specified in that section, being that of the signing of the bill and of any protest that may be offered.

But it is persistently urged that the statute never became a law because the journals do not show that the bill

3. LEGISLATIVE PRO-
CEEDINGS AND
JOURNALS: bills to
be signed in open
session.
was " signed by the presiding officer of each house in open session." The remarks made above as to presumptions, are equally applicable in this instance. But further with regard to that matter: The journals of the respective houses show, in the fullest and most unexceptionable manner, that section 31, of article 4, providing that " no bill shall become a law unless on its final passage the votes be taken by yeas and nays, the name of the members voting for and against the same be entered in the journal, and a majority of the members elected to each house be recorded as voting in its favor," met with the strictest compliance. And the last entry on the senate journal in respect to the bill is that made May 17th, in these words: " Substitute No 1, for senate bill No. 75, was taken up, read at length by the secretary and signed by the president, no objections being made." A like entry appears on the house journal of date May 19th, as follows: " Senate substitute No. 1 for senate bill No. 75, entitled an act to amend and revise chapter 2, title 2, of the General Statutes of Missouri, concerning popular elections, was taken up, read at length ,by the clerk and signed by the speaker *pro tem*, without objection." It is true that neither journal discloses *totidem verbis* that the bill was " signed in open session," nor was this necessary, because that it was so signed is clearly apparent from other entries in the journals, both preceding and succeeding the one in question, that each house was in " open session" when the signatures of the respective officers were affixed to the bill. So that the denial on this point contained in respondent's answer is plainly unsupported by the evidence, and, together with the argument based thereon, falls to the ground.

III. It only remains to determine whether section 38, *supra*, has been violated. That section, so far as necessary

4. ———: ———:
presenting bills to
governor.
to be quoted, is as follows: " When the bill has been signed, as provided for in the preceding section, it shall be the duty of the secretary of the

18—71

senate, if the bill originated in the senate, and of the chief clerk of the house of representatives, if the bill originated in the house, to present the same in person on the same day on which it was signed as aforesaid, to the governor, and enter the fact upon the journal." Both houses of the general assembly adjourned on the 20th day of May *sine die*, and it is pressed upon our attention that as the bill originated in the senate, it was the duty of the secretary of that body strictly to comply both as to time and manner with the provisions of the foregoing section and to enter the fact of such compliance upon the journal; and that, since the journal does not show this was done, the bill has not become a law. It was doubtless the clear duty of the secretary of the senate to do as respondent claims and as the constitution enjoins; but the question for consideration is: What are the consequences to flow from his failure to note the fact of a duty performed upon the journal.

We do not regard respondent's position tenable, because not regarding the section as mandatory; and these are our reasons, therefor : " If *mandatory*, then no matter what the circumstances, the bill must be delivered *in person* by the clerical officer of the house in which it originated on the *very day* of its passage, and that fact entered upon the journal, or else the bill, passed after many days of anxious, arduous legislative labor, with all the solemnities, and authenticated by all the formalities ordained by other sections of the constitution, could be defeated by the sickness or absence of the governor, or the misfeasance, malfeasance, sickness, absence or death of the officer on whom is enjoined the personal delivery of the bill, or, as frequently occurs, by the bill having been put upon its final passage a few minutes before midnight. When such consequences as these are to attend such a construction as that insisted upon, we may well hesitate before giving that construction our sanction.

The cases cited for respondent are instances where

The State ex rel. The Attorney General v. Mead.

some prohibitory provision of the constitution had been violated during the *passage* of the *bill,* as by the journals failing to show that the ayes and noes were taken, and a concurrence had of a majority of the members-elect in each house.    Here, before the duties of the secretary of the senate began, the *process of legislation had ceased,* and during its passage, the bill had, as before seen, successfully run the gauntlet of constitutional prohibitions.    Besides, while section 31, *supra,* is careful to provide that no bill shall become a law unless the journal bears witness to a due observance of certain formalities, and while section 37, *supra,* contains a like prohibitory provision, section 38, neither expressly nor impliedly says that fatal consequences shall attend the failure of the proper official to do his duty, and make entry thereof upon the journal.    This view would seem to be entirely conclusive that section 38 was only designed to be directory.

As to the argument that it is "left to conjecture" how the bill reached the governor, since the journal contains no recital of its delivery, it is enough to say that the message of the governor transmitting the bill in question to the secretary of State with his approval recites that the bill had been presented to him, and the legal inference is that it was properly presented, both as to time and manner, and therefore, we certainly shall not in this instance reverse all ordinary presumptions by presuming that what appears to have been fairly and rightfully done was surreptitiously or fraudulently done.    Such a ruling would be at variance with all rules of evidence hitherto announced.

These considerations induce us to pronounce the statute valid and award a judgment of ouster.    All concur.