*Wells, Smith & Macon*, attorneys for appellant.
*Yeaman & John*, attorneys for appellee.

---

# IN RE T. H. ROBERTS.

*(Supreme Court Colorado, May, 1881—Petition for writ of Habeas Corpus.)*

PRINTED STATUTES ONLY PRIMA FACIE EVIDENCE OF THE LAW. The printed statutes published by authority, and the enrolled bills duly authenticated and on file with the proper custodian, are *prima facie* evidence of what the law is, but not conclusive.

LEGISLATIVE JOURNALS AS EVIDENCE. Whenever a question arises of the existence of a statute, or of its precise term, or its constitutional enactment, the court may resort to the legislative journals as proper sources of information as evidence, the value of which the court is to determine.

DIRECTORY CONSTITUTIONAL PROVISION—PRESUMPTION. The requirement of Sec. 26, of the constitution of the state of Colorado, that the fact of the signing of a bill by the presiding officer in the presence of the

house over which he presides "shall be entered on the journal," is directory, and in the silence of the journal it will be presumed that the bill was so signed.

STONE, J. The petitioner Roberts avers in substance, that he is held in custody by the sheriff of Lake county by virtue of a warrant of commitment issued by the judge of the district court of the said county of Lake, upon a criminal charge; that he is unlawfully deprived of his liberty, for the reasons, as alleged, that the judge of said court was without lawful authority to act in the premises, in that the act of the general assembly increasing the number of judicial districts in the state, and establishing the court aforesaid, entitled "An act to establish judicial districts in the state of Colorado, and to provide for the holding of district courts therein, and the manner of commencing and adjourning the same, and return of process and providing for the transfer of causes therein, and for continuing causes in case of adjournment, and to repeal all other acts in relation thereto," approved March 5, 1881, was not passed in accordance with certain requirements of the constitution, and hence, that said act is invalid and without force to confer any lawful authority whatever upon the said judge to commit the petitioner.

The specific grounds alleged against the validity of the act in question are:

*First*—That the bill for said act having originated in the house, and having passed that body, was amended in several respects by the senate; that the bill, together with the amendments, was returned to the house for its concurrence, and that such of said amendments as were concurred in, were not adopted by the house in conformity with the requirements of section 23, article V, of the constitution, in that a vote was not taken by the ayes and noes of the members voting thereon, nor were the names of those voting recorded in the journals of the house, "except as appears" by the journals, etc., the point of objection being that the journal records are so defective that they fail to disclose the fact with required certainty.

*Second*—That the fact of the signing of said bill by the speaker, in the presence of the house, after its final passage, was not entered upon the journal of the house, as required by section 26 of article V, of the constitution.

The provisions of the constitution referred to are as follows:

Art. V, Sec. 23. "No amendment to any bill by one house shall be concurred in by the other, nor shall the report of any committee of conference be adopted in either house, except by a vote of a majority of the members elected thereto, taken by the ayes and noes, and the names of those voting recorded upon the journal thereof."

Sec. 26. "The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the general assembly, after their titles shall have been publicly read, immediately before signing; and the fact of signing shall be entered on the journal."

Several questions are involved in the consideration of this case.

A question of fact is: Was the act in question passed in compliance with the constitutional provisions above quoted?

The questions of law are:

*First*—May the court go back of the enrolled act, duly authenticated by the signatures of the presiding officers of the two houses and the governor, and filed with the secretary of state, and examine the legislative journals, as sources of information touching the regularity of its enactment, for the purpose of determining its validity as a statute?

*Second*—If the journal may be looked into, must the regularity of the enactment appear therefrom affirmatively, or may it be to any extent presumed?

*Third*—In case of non-compliance with these constitutional requirements or directions, is the act valid? and hence,

*Fourth*—Are these constitutional provisions mandatory, or directory merely?

The first of the legal questions propounded is a much mooted one, and of which it may be said there is highly respectable authority on both sides. Although considering the importance of the case, in view of the public interests involved, we have made a laborious research of all the accessible authorities, aided by the briefs of learned counsel in the case, I do not deem it necessary to enter upon a lengthy discussion of the question, or to review the authorities covering it, but will merely cite the leading cases upon both sides, with such brief statements as will serve to present a sort of balance sheet of the authorities.

The English doctrine is, that it is not competent to go beyond

the parliament roll, which is itself considered a record of as great dignity as a record of court, importing verity, and the enrolled act is to be determined by itself, whether it be a statute or not.

In this country the question, in some form, has been passed upon by the highest courts of twenty-two states, and in over fifty cases.

As they now stand, nine states may be classed as adhering to the English doctrine, to wit: Connecticut, New York, New Jersey, Mississippi, Louisiana, Indiana, Iowa, California and Nevada. The leading cases in support of the doctrine in those states are: *Eld* v. *Goram*, 20 Conn., 8; *People* v. *Devlin*, 33 N. Y., 269; *Pangborn* v. *Young*, 32 N. Y., 29; *Green* v. *Welder*, 32 Miss., 650; *La. State Lottery* v. *Richoux*, 23 La. Ann., 743; 8 *Am. Reporter*, 602; *Evans* v. *Brown*, 30 Ind., 514; *Duncombe* v. *Prindle*, 12 Iowa, 1; *Sherman* v. *Story*, 30 Cal., 258; *State* v. *Swift*, 10 Nevada, 176; 21 *Am. Rep.*, 721.

The states whose courts hold to the contrary, and to what may be called the American doctrine, are the thirteen following: New Hampshire, Vermont, Maryland, West Virginia, South Carolina, Alabama, Arkansas, Pennsylvania, Ohio, Illinois, Michigan, Minnesota and Missouri. Opin. of the Judges, 52 N. H., 622; *In re Williams*, 20 Vermont, 656; *Legg et al.* v. *the Mayor, etc.*, 42 Md., 203; *Osborne et al.* v. *Stanley et al.*, 5 W. Va., 85; *State* v. *Platt*, 2 S. C., 150; 16 *Am. Rep.*, 647; *Moody* v. *State*, 48 Ala., 115; 17 *Am. Rep.*, 28; *Worthen* v. *Badgett*, 32 Ark., 496; *Southwark Bank* v. *Com'th*, 26 Pa. St., 446; *Fordice* v. *Mahoney*, 13 Mich., 481; *Supervisors* v. *Keenan*, 2 Minn., 333; *State* v. *Mead*, 91 Mo., 266.

In addition to these last cited cases, and in support of the said general doctrine, is the case of *Gardner* v. *the Collector, etc.*, in the Supreme Court of the United States, 6 Wall., 499, and also the following text writers: Cooley Con. Lim., 135-9; Sedgwick Stat. and Const. Law (2d Ed.), 55; Smith's Con. Lim., Secs. 833-8; Cushing's Legislative Assemblies, Sec. 2211, *et seq.*; 1 Greenleaf Ev., Sec. 491.

This last author lays down the rule that the journals of either house are the proper evidence of the action of that house upon all matters before it. The Vermont and Pennsylvania cases cited above go no further than this upon the questions considered, and

even the New York case of the *People* v. *Devlin*, *supra*, admits the correctness of this rule. Indeed, it may be observed that the English rule allows the journals of parliament to be admissible evidence for all purposes for which they are there considered to be kept, though not for the purpose of impeaching an enrolled act. And it is to be remarked that the circumstance of the absence of a written constitution in England requiring legislative journals to be kept, none whatever being kept in the House of Commons till the time of Edward VI, while in most of the states of the Union the constitutions require journals of the proceedings, and point out what they shall contain, will account for much of the diversity of opinion by the courts of this country.

It is also notable, that owing to changes made in the fundamental law by the adoption of new constitutions, the courts of several states have overruled themselves upon this question. The decision in 33 N. Y., *supra*, is in conflict with what seems to have been the ruling in the earlier cases. The cases in 30 Ind. and 30 Cal. overruled the early decisions in those states. On the other hand, while, until recently, the case of the *Pac. R. R.* v. *the Gov.*, 23 Mo., 353, has been regarded as one of the leading cases in support of the English doctrine, a change in the constitution of that state in 1865, necessitated the court, in the case of *State* v. *Mead*, *supra* (1879), to announce the contrary doctrine. So also the case of *Fouke* v. *Fleming*, 13 Md., 392, is overruled by the cases *Berry* v. *Drum. Pt. R. R.*, 41 Md., 440, and that of *Legg* v. *Mayor*, 42 Md., cited *supra*.

In view of these authorities, and of the precise language and reasonable import of our own constitution, we must hold:

*First*—That the enrolled act of the general assembly, duly signed and authenticated by the proper officers, and lodged with the proper custodian, is evidence *prima facie* of what the law is, and of the regularity of its constitutional enactment. But this evidence is not conclusive. To so hold would leave the constitutional requirements touching the mode of passing bills, binding only in conscience upon members of the legislature. The statute making the printed copy of the laws evidence does not make it conclusive.

*Second*—The legislative journals are required by the constitution, and for an obvious purpose certain things are required to be entered therein. They possess the character of public records,

and as such are admissible as evidence of the proceedings of legislative bodies, and this independently of statutory provisions.

Their value as evidence, however, is a question for the courts, and will be affected by the internal evidence which such records furnish as to the system and completeness or carelessness and slovenliness with which they have been kept.

Next, as to the question of fact: What do the journals show in the particulars complained of by the petitioner?

Before proceeding to speak of their contents, it is in place to observe that these so-called journals are not strictly journals, but memoranda for journals. They are the original sheets of the clerk, upon which minutes or memoranda of the daily proceedings of the body are set down in the order of their occurrence, partly in ink and partly in pencil, and in which are pasted the partly printed and partly written reports, messages and voting lists or roll-calls of the houses, and with many abbreviations of words, phrases and recitals. From these memoranda the journals proper are to be written out completely and historically. To do this well, as it should be, and as contemplated by the constitution directing it, would be practically impossible during the hours of work and confusion of legislative proccedings. But after the day's adjournment, the journals should be written up in proper shape, so that if necessary, they could be read each morning for correction and approval under the eye of the presiding officer and the whole house, thus fitting them at once, and when it can best be done for publication, and as public records in the state archives. In so important a matter as the constitutional requirement of keeping journals of the general assembly, it is earnestly to be hoped that more careful attention will be given in future legislative proceedings. By inspection of these original journals of the house clerk, which we find lodged with the proper custodian of the law, and must treat as journals of the proceedings they record, however imperfect, it appears that the bill under consideration, which is designated as "H. B. 183," passed the house and went to the senate, where it was passed with seven amendments, and with them was returned to the house for action upon the amendments. The house non-concurred in three of the amendments, and next following thereafter is the following: "Mr. Rowen moved that the remaining amendments be concurred in." Hereupon the record fails to recite *in totidem verbis*, what

action was had upon the motion, but there immediately follows, pasted upon the sheet a printed list of the names of the members of the house, in alphabetical order, with the words "ayes" and "noes" printed on opposite sides of the names, and headed "house roll-call," over which is written "C. C. 183." On the side of the ayes are written figures opposite certain of the names, numbered from the top down the list to the number of thirty, and on the opposite or noes side the number one only appears opposite a name. The total number of names printed on the list, including the speaker, is forty-nine.

Afterwards, in the minutes appears a message from the senate, announcing that that body had receded from part of its amendments not concurred in, insisting upon the others, and asking for a committee of conference upon the matter.

The house, as appears, appointed such a committee, which, after a conference with a like senate committee, reported recommending that the house do concur in those amendments insisted upon by the senate. This report was objected to by certain members, and the matter was re-committed.

Thereafter the committee submitted what is termed a "further report," recommending the adoption of, or concurrence in the amendment under consideration, with some modifications. Thereupon, as the record recites, "Mr. Horner moved to adopt the supplemental report."

Here again the record is silent as to what was done upon the motion, save that another legislative "roll-call" is pasted on the page, headed "Adopt. Rep. C. Com." The names of members on this list marked on the side of the ayes are twenty-eight, and the noes, three.

Then follows this entry, "The question being upon the adoption of the report relative to senate amendments referring to terms of court in Clear Creek county."

Then comes another roll-call, headed "Clear Creek," with the names marked under the ayes numbering twenty-nine, noes, none. Afterward, on motion of Mr. Garcia, the house refused to concur in the senate amendments relating to the terms of court in Conejos county; and subsequently appears a message from the senate, announcing that it had receded from said amendment affecting the county of Conejos. Then the house committee on enrollment reports the bill correctly enrolled, and thereafter the

joint committee on enrollment report as follows: "Mr. Speaker, the joint committee on enrollment have examined house bills Nos. 183, 161, 219; 161, legislative apportionment; 219, appropriation; 183, judicial apportionment, and find the same correctly enrolled. Charles P. Bryan, chairman on part of house."

Then immediately follows this entry: "At 7:30 p. m. the speaker, in presence of the house, signed."

This is all of the record relating to the bill in question that is pertinent to our examination.

Now, let us go back to the first objection made by petitioner, that the senate amendments "were not adopted by the ayes and noes of the members of the house, nor were the names of those voting recorded upon the journal thereof."

True, there is no such plain recital in form as is expected and required, not in terms by the constitution, but by common sense interpretations in a complete narration of the proceedings. And we may admit that Sec. 23, of Art. V, of the constitution is mandatory, in so far as it requires the vote to be taken by the ayes and noes.

There is an express prohibition of the enactment of a law in any other mode than the one pointed out, and hence a compliance therewith is a condition precedent to the validity of a legislative act coming within the provisions of the section.

But to any one at all familiar with the mode of legislative proceedings, and the customary manner in which minutes for making up the journals are kept by the clerks during the hours of business, there is no great difficulty in deriving the proper meaning from the records or journal memoranda here presented. These printed forms of roll-call are in common, and probably universal, use in legislative bodies, for the purpose of taking and recording the result of a vote, and their use may be regarded as necessary in this age, to facilitate and accomplish the large amount of business to be transacted within the limited sittings of the legislature. So of the other printed forms for reports of committees, etc., and the abbreviations of well known signification. For example: House bills are designated in the authorized printed forms for use in the proceedings, and even in the published journals, by the initial letters, H. B.; senate bills as S. B.; house resolutions as H. R., and so on; and of these authorized abbreviations we may

57

take judicial notice. The meaning of numerous other signs and abbreviations made by the clerks for convenience in keeping up with the current of proceedings the court may not judicially know, but, to an intelligent mind, their meaning can be readily discovered, where they are employed in direct connection with the subject matter to which they evidently refer.

Following the letters indicating bills are placed the figures numbering them in the order of their introduction in the house. In the instance before us, the motion was to concur in certain amendments. This was required to be done by the ayes and noes, and the names of the members voting were to be recorded. Immediately following the statement of the motion comes the printed roll-call, which is headed by the letters and figures, " C. C. 183."

Now, when it is known from the previous recital of the motion itself that the action next to be taken was to concur in the amendments to house bill No. 183, this collocation of the subject matter serves to interpret the abbreviations, so that they can be apprehended with a fair degree of certainty, to imply that the roll-call list of members marked under the headings " ayes" and "noes," is the recorded result of a vote to concur in the amendments to house bill No. 183. For like reasons, we may rationally interpret the roll-call headed "Adopt. Rep. C. Com." to mean the vote taken upon the adoption of the report of the conference committee, and, in both these instances, it is equally inferable that a majority voted aye, and the members voting aye and no, are readily determinable by the numbers opposite their names.

In the case of the *Board of Supervisors* v. *Heenan*, which we have already cited, the Court say: "When journals are kept as loosely as these seem to be, the Court will endeavor to sustain a law, if its constitutional passage can be spelled out of them." In this connection it is to be noted, that if we should admit these records to be so untranslatable as to be deemed altogether silent upon the fact in controversy, yet the objection of petitioner rests upon merely negative evidence—that is to say, the most that can be contended is, that while the records do not show affirmatively an obedience to the constitutional command, neither do they affirmatively show a disobedience. In such cases I think we may safely apply the doctrine of the maxim, " *Omnia praesum-*

*matur vite esse acta."* If the records are silent touching the compliance with the constitutional requirement, there is a presumption of right action in favor of a body acting under both to support the constitution. *State* v. *Mead,* 71 Mo., 266; *Miller & Gibson* v. *State,* 3 Ohio St., 475; *Worthan* v. *Badgett,* 33 Ark., 496; Cooley Con. Lim., 135.

In this case, then, aided by such legal presumption, I think sufficient appears to satisfy the judicial mind that the ayes and noes were taken and recorded as required.

In respect to the other objection, that it does not appear by the record that the bill was signed by the speaker in the presence of the house, we must hold that Sec. 26, of Art. V, of the constitution is directory merely, in so far as it relates to the requirement that the fact of signing shall be entered upon the journal.

The language is altogether different from that in Sec. 23, in that such entry on the journal is not made a condition of the validity of the act by words of prohibition. This view is amply sustained by authority. Besides, we think, aided by the context, it may, perhaps, be fairly inferred that the record of the signing by the speaker in the presence of the house, though not in express terms, yet by not unreasonable inference, refers to the bills specified in the report immediately preceding.

To summarize the foregoing opinion, the court holds:

*First*—That the printed statutes published by authority and the enrolled bills duly authenticated and on file with the proper custodian are *prima facie* evidence of what the law is, but not conclusive.

*Second*—That whenever a question arises of the existence of a statute, or of its precise terms, or its constitutional enactment, the court may resort to the legislative journals as proper sources of information as evidence, the value of which the court is to determine.

*Third*—That in this case, although some of the constitutional provisions governing the mode of enactments are mandatory, sufficient appears in the legislative records to show a substantial compliance with their requirements.

*Fourth*—The requirement of Sec. 26, that the fact of the signing of a bill by the presiding officer in the presence of the house

over which he presides "shall be entered on the journal" is directory, and, in the silence of the journal, it will be presumed that the bill was so signed.

The writ is accordingly refused.

*C. S. Thomas*, attorney for petitioner.
*Clinton Reed & John W. Jenkins, per contra.*