Bissell, J.
A petition in the name of the city of Denver was presented which sought the condemnation of certain lands for park purposes outside the corporate limits. Alfred H. and George T. Miles were named as defendants, though the petition averred that Alfred H. Miles appeared by the record to be the owner in fee, and George T. Miles, Andrew Whitehead, and Edwin K. Whitehead claimed or appeared to have some claim or interest, legal or equitable in and to the property. The principal question concerns the status of the petitioner and raises the inquiry whether it was filed by the oity or in its behalf by persons authorized to initiate such proceedings. The premise on which the opinion must rest is that the powers of municipalities are matters of direct grant from the legislature, and whatever powers this limited sovereignty seeks to exercise must either be found within the terms of the grant or must be necessarily incident or requisite to the exercise of the authority conferred.
At or before the appearance day, the Whiteheads filed a pleading in the form of an answer taking issue on some matters of fact set up in the petition, and suggesting the defensive facts on which they disputed the authority of the city to condemn the land. The city filed a motion to strike this answer from the files which was sustained, and on this order which struck their answer, the Whiteheads predicate error. They insist that under the present practice and the statute relating to condemnation as amended in 1889, they had a right to file an answer and present an issue, and on the petition and answer have the hearing and introduce their testimony. The answer is, that it has been decided by the supreme court that no answer is either requisite or permissible, the proceedings being both initiated, continued and concluded on the petition and the proof which the parties in interest may respectively offer. This position is supported by The Denver & Rio Grande R. R. Co. v. Griffith, 17 Colo. 598. In examining the matter of practice in these proceedings that *136 court considered tbe statute regulating them and undoubtedly held tl;at there was no provision in the statute as it then stood for written pleadings other than the petition. As they construed the act it contemplates that the cause shall he heard alone on the petition, it being .taken as denied and both parties being at liberty to produce such proof as they may be able in support of, or in opposition to, the application. The act however was subsequently amended. Session Laws of 1889, p. 156. By this act, section 7 of the act of 1877 was amended and as amended it provides “ that any party to any proceeding brought under the provisions of this act, before the appointment of commissioners * * * and before the expiration of the time for the defendant to appear and answer * * * .” The phraseology of this amendatory provision undoubtedly contemplates the filing of an answer within the time provided for the defendant’s appearance. The right conferred is one to demand a jury to ascertain the damages. The amendatory section provides that “ demand may be made in the pleadings, or by a separate writing filed with the clerk.” This statute would seem to be sufficiently broad to justify the defendant to file an answer, and we are quite of the opinion that had this statute been then in force, the supreme court might have concluded, not necessarily that an answer was requisite, but at least that it was permissible, and that it would not have been error for the court to permit one to be filed. Notwithstanding this we do not believe the action 'of the court in striking it out is of necessity an error which would disturb the judgment. The answer being stricken out the case was triable on the petition and the defendant still had the right which was accorded to him by the court to introduce whatever evidence he had in opposition to the proceeding. In the present case the answer'was permitted to stand as an affidavit and the court proceeded to hear, not exactly the issues, but the application, and on the testimony which both sides offered determine the propriety of the condemnation. We do not in any wise intend to criticize the opinion of the supreme court in the 17th Colorado, but *137 believe that the amendatory act contains a sufficiently full and-broad indication of the legislative purpose to warrant the defendant to file an answer. We do not conclude however that a failure on the part of the defendant to file one would entitle the petitioner to a judgment as of default, or preclude the defendant from introducing his proof if he failed to file one. In other words, there is no distinct and specific direction that the defendant shall tender an answer, and in the absence of any such definite direction whether the court permits one to be filed or strikes one out that has been filed, it would not affect the substantial rights and interests of the defendants or claimants to such an extent as to compel us to overturn any judgment which the court might enter.
The next proposition on which the appellants rely, and in which we concur in general with their views, is that to authorize proceedings in condemnation by the city, the city council as such must authorize and institute the proceedings. There have been of late years some very broad and marked changes in the charter under which the city of Denver acts. It has always been a city acting under a special charter which has from time to time been amended, but, as it now stands, it seems to be a tolerably complete system of municipal government. The acts relating to it are found in the Session Laws of 1893, amended by the acts of 1895 and 1897. We shall make no reference to the volumes of the Session Laws since we have before us a copy of the charter of the city of Denver, compiled and published under the authority of the city council in 1898. This is accessible to the courts and the profession, and it is more convenient to refer to than the statutes. At the outset it may be remarked that, under the general scheme exhibited by this amended charter of 1893, the municipal government was, to use a phrase which is not entirely accurate but conveys our notion, separated into departments. The general powers and authority were given to the municipality as such, and to be exercised by the common council. By the charter there were established several different boards: The board of public works, the fire and *138 police board, and the department of parks, operated by a park commission. To each of these departments or boards were given certain distinct and specific powers which they could exercise independently of the common council, and without regard to the exercise of any legislative authority by that body. We do not conclude that this separation of the municipal powers and the grant of them to these different boards at all affects the question as to whether what these boards or commissions do are binding on the city. As we view it, the charter attempts to confer on these boards and commissions certain distinct and specific powers, and wherever those powers are thus conferred, if they are exercised by the boards or by the commission, they are as binding as though exercised directly under the authority of the city government, whether legislative or executive, and these boards and commissions are to be treated as part and parcel of the municipality, and they are in fact the agents of the city within the limits of the authority granted. This doctrine is fully sustained by a well considered case. Barnes v. District of Columbia, 91 U. S. 540.
We do not need to adopt the position of the supreme court of the United States in all of its particulars, but the case is illustrative of the principle on which we hold that these boards and commissions are really a parcel of the municipality and an integral part of the municipal government, whose acts within the scope of the powers granted will undoubtedly be binding on the city. Wherever they -are authorized to act and they do act within the limits of the grant, their acts are the acts of the city, binding on it, and they may call on whomsoever they select as defendants to answer and defend in proceedings which they are authorized to initiate. Granting this proposition and taking it as a basis, it does not of necessity follow that this petition was filed by the city or on its behalf by a department of the government authorized to proceed. At the outset the right to improve and keep in repair streets, avenues, lanes, alleys, parks and other public places, and to acquire by purchase or condemnation under *139 the general laws of the state sites for parks and public buildings within the city, or between the city and the source from which water is taken, are conferred on the city council. Charter City of Denver, subdivision 27, paragraphs 3 and 57; Session Laws, 1893, pp. 144, 145. This authority is somewhat restricted by the subsequent provisions of the act, and we find in paragraphs 116, 118, 119, 120, 121 and 122, a distinct restriction of the authority of the city council and a grant of power to the park commission. By those provisions the park commission, with the approval of the mayor, has exclusive authority to expend on behalf of the city all money that may be raised by taxation for park purposes, and all money appropriated' by the city council for the same purpose. It likewise has exclusive management and control of all parks belonging to the city, with power to lay out, regulate and improve them, to prohibit traffic in the parks, and by paragraph 119, which is section 88 of the charter, the city may, on tbe recommendation of the commission, condemn land for park sites. The other paragraphs to which reference has been made simply exhibit in other particulars the power of the commission over the parks. It will thus be seen that express authority is conferred on the city, on the recommendation of the commission, to condemn lands. This would seem to be a carrying out and an expression of the general authority before granted to the city council by the provisions first referred to. If these were the only provisions found in the charter we would most undoubtedly hold that the only authority to condemn lands lay in the city, to be exercised by the council on the recommendation of the department of parks. There are, however, other provisions found in the charter to which we only refer, lest the opinion should be unduly construed to extend to a proposition which we have no intention to decide. We do not intend to determine where the land must be situate which may be condemned for park sites, either by the city or by the park commission, for this question is not presented. Nor do we intend to decide when, and under what circumstances, and within what *140 limits, the city council may exercise the general powers granted to condemn lands for park purposes. This matter is not presented. Neither do we intend to decide when, and under what circumstances, the park commission may condemn lands, except that we must of necessity hold that there are conditions and there are circumstances under which the park commission may act independently of the council and initiate proceedings in condemnation. This authority is found in paragraphs 220, et seq., being sections 63 to 67 of the Session Laws. Under these provisions wherever the city has been divided into park districts, or redivided into districts or additions are made thereto, the park commission is given express and specific authority by suitable proceedings in the name of the city to condemn real estate, and under certain circumstances to purchase real estate for park purposes. We thus see that there are conditions under which the city may condemn lands on the recommendation of the park commission, conditions under which the commission itself may initiate proceedings to condemn lands without antecedent authority or action by the city council, and without reference to its legislative action. The question when, and the circumstances under which, this authority may be exercised are not within the purview of this case, uor are we called on to express an opinion about it, or determine when and how, and in what manner, the authority may be exercised. We simply say that the authority is granted to the park commission under certain circumstances. This condition is to our mind a controlling circumstance in determining the regularity of the present proceedings. The doctrine of expressio unius is as well settled as any other in the law. Where there is within the limits of a charter a grant of power to two bodies, to one general and to another under specific circumstances, it is a most undoubted rule of construction that the power may be exercised by the latter body or the part of the whole, only under the limitations and when the circumstances exist which are specifically provided for. When these circumstances do not exist, and when the facts *141 do not provide for it, then the general grant of power to the entire municipality must be exercised by the only body which by the terms of the charter or by the law generally, is properly empowered to act on its behalf. We therefore conclude that since there was neither allegation in the petition nor proof in the record which established, or tended to establish, the fact that the city has been divided into districts, thereby demonstrating that the commission had authority in and of itself to act, it was without the right to institute proceedings on behalf of the city to condemn these lands, and in order to sustain the proceedings there ought to have been, offered proof to the point that the city, through its proper authority, to wit, the common council, had authorized and directed these proceedings.
There is another question presented by the briefs of counsel on which we do not propose to express an opinion. An attack was made by the answer and attempted to be sustained by proof with reference to the constitutionality of the act granting the charter to the city of Denver. We do not regard the question as of necessity involved. It was practically waived by counsel and conceded to be settled by In re Roberts, 5 Colo. 525, and we therefore do not decide it.
The judgment of condemnation was erroneously entered and must be reversed, which is accordingly done.

Reversed.