## HALE v. WALKER.

1. **National banks: LIABILITY OF SHAREHOLDER.** The transferee of stock or shares in a national bank (organized under the federal banking act), at the time of the failure of the bank, is, where the transfer appears to be absolute on the books of the bank, liable for the debts of the association to the extent of the shares held by him, notwithstanding he holds them by transfer or assignment as collateral security for a loan to the shareholder from whom he received the transfer.

2. **Pleading: FRAUD.** In order to admit evidence of fraud under our system of pleading, there should be a statement of the facts constituting the fraud.

*Appeal from Van Buren District Court.*

FRIDAY, APRIL 21.

ON the 28th day of December, 1868, the plaintiff filed in the Van Buren district court a petition, alleging that plaintiff has been duly appointed receiver of the First National Bank of Keokuk, organized under the currency act of congress, approved Feb. 25, 1863, which bank closed its doors February 21, 1868, and refused to pay its circulating notes and other liabilities; that its liabilities were $242,000; that all of its available assets would not pay over fifty per cent of its liabilities.

That by the said act of congress, under which said bank was organized (section 12), the stockholders of the bank are individually liable, to the amount of stock owned by them, for the debts of the bank, and that it is necessary for him as such receiver to enforce this individual liability; that at the time said bank closed its doors and refused to pay its liabilities, "the defendant, Joel Walker, was the transferee of H. K. Love, and owner of fifty shares of stock

of $100 each, in said bank, amounting to $5,000, as will fully appear from the stock books of said bank."

The plaintiff asks judgment for $5,000 with interest. Appended to the petition is the following exhibit : "Copy from the stock books of the bank. Dr.—Joel Walker, May 24, 1866, fifty shares, paid $5,000. Cr.—May 28, 1866, paid up $5,000."

To this petition the defendant, on the 15th day of January, 1869, filed his answer, in which he "denies that at the time the said banking association closed its doors, and failed to redeem its circulation and pay its liabilities, that the said Joel Walker became the owner (as the transferee of H. K. Love, or otherwise) of fifty shares of stock of $100 each, in said bank, amounting to $5,000; and as to all the foregoing averments of the petition not herein specifically denied, which defendant neither admits nor denies, he calls for strict proof."

"And by way of further answer he shows that on June 21, 1865, this defendant was the owner of the following described United States bonds, viz.: of bonds known as 10-40 bonds, $2,000, and of 7-30 bonds, $3,000; that one H. K. Love, being then and there the president of said banking association (and so remaining until on and after February 21, 1868), being desirous of procuring the loan and use of said bonds, either for himself or otherwise, borrowed the same of this defendant, giving defendant as security therefor a pledge of certain shares of stock in said banking association, as will fully appear by the agreement, of date June 21, 1865, of which a copy is hereto attached, marked "Exhibit A," and made part of this answer.

That afterward, to wit, on or about May 24, 1866, the said Love (still acting as, and being president of said bank as aforesaid), representing that the aforesaid agreement and pledge of bank stock was not in as reliable and perfect a shape and condition as would be desirable for the interest of defendant, so as to make him the unqualified pledgee

of said bank stock, and informing defendant that to make said pledge secure and reliable, its transfer on the books of said bank, as said pledge, would be desirable, if. not necessary, induced defendant to surrender said agreement and pledge as shown by "Exhibit A," and thereupon executed to defendant, instead thereof, a new mortgage or pledge thereof, a copy of which is hereto attached, marked "Exhibit B," and made part hereof. And he shows that in the execution of said agreement it was fully and explicitly understood between said Love and this defendant, that the defendant under said agreement continued to hold said stock only as the pledgee or mortgagee thereof, and not otherwise ; that in no intendment was he to be held or construed as a purchaser or owner thereof, or as a shareholder of said banking association ; that in all said matters this defendant acted under and relied upon the representation of the said Love; that the defendant was ignorant of and unskilled in transactions of this nature, and knowing said Love to be the president of said bank, constant in his attendance thereon, and fully qualified by experience as a banker, trusted implicitly to the representation by him then and there made, as to the nature and effect of said written agreement ; and he avers and is ready to show that if, by any construction or intendment of law, the said instrument, or any part of the same, shall seem to hold this defendant to be a purchaser, and not a mortgagee, of said stock, then said instrument so set forth, which was then and there written by the said Love, was either false or fraudulently so written, or so done by mistake, as the whole tenor and purport of said agreement fully shows, and, therefore, should be corrected and reformed so as to correctly agree with the intention of the defendant and the representations and agreements of said Love, as made at the time, and with the evident purport and intention of said instrument taken as a whole.

And defendant further shows that he has no knowledge

or information as to the stock books of said banking association, nor of any entries therein contained, never having seen the same, that if so be the same contains the said entries as set out in the petition,    *    *    *    * which he neither admits nor denies, but calls for proof of the same, the said entries are untrue and false and fraudulently made, and without the knowledge of this defendant, and that this defendant is not bound nor concluded thereby; for he shows that by section 40 of the said currency act, the said president and cashier of said banking association were required to keep a full and correct list of the names and residences of the shareholders of said banking association, and to forward to the comptroller of the currency, semi-annually, a copy of said list, verified by the oath of said president or cashier; that the said list, if exhibited in court by said treasurer, will show the said Love to be the actual shareholder and owner of the said fifty shares of stock, provided said list shall have been correctly kept, and in no event is this defendant to be held liable for the malfeasance (if any) of the said president or cashier touching said list; that the books of said bank should have shown (according to the intent and purport of said agreement) that the transfer made by said Love to defendant was made by way of mortgage or pledge, and not of sale."

The answer further alleges that by the terms of said agreement it was to terminate on the 15th day of August, 1867; that defendant was induced by said Love to extend the time until the 15th day of February, 1868; that he went to the city of Keokuk, on the 14th of February, for the purpose of carrying into effect the said agreement for surrendering said pledge of stock and receiving the said bonds; that on the 15th day of February he learned that the said Love had, on the morning of that day, suddenly started for the east, before banking hours; that Love remained absent until the 21st of February, 1868, and that immediately upon his return the said bank suspended, and

never afterward opened its doors for the transaction of, business; and that Love has been, on his own motion, declared a bankrupt. The defendant prays that the cause may be transferred to the equity side of the court, that a decree may be entered reforming said contract, as set out in exhibit "B," so that the same may be conformable to the real intent and purpose of the parties, and that, so far as it has been fraudulently drawn, the same may be set aside, etc.

Exhibit "A," referred to in the answer, is as follows: "First National Bank of Keokuk, Iowa, No. 46, fifty shares. Be it known that H. K. Love is the proprietor of fifty shares of the capital stock of the First National Bank of Keokuk, on which $100 per share have been paid, and which is transferable only on the books of the association by him or his attorney, on surrender of this certificate:

"KEOKUK, *June* 21, 1865.
"H. K. Love, President.

"Joel Walker has deposited with me $2,000 in United States 10-40 bonds, and $3,000 in United States 7-30 bonds, with semi-annual coupons attached, which I agree to return to him or his order on the 15th day of August, 1867. For the use of said bonds, I agree to collect the interest and pay over to said Walker without charge. As security for the safe return of said bonds, I have placed in the hands of said Walker share No. 46, of the First National bank of Keokuk, Iowa, calling for fifty shares of the stock of said bank, which is to be returned to me with this certificate, when the above United States bonds will be returned to him.          "H. K. Love.
"KEOKUK, *June* 21, 1865."

The following is exhibit "B;" referred to in the answer: "This agreement between Joel Walker and H. K. Love, witnesseth: That the said Walker has this day purchased

of the said Love fifty shares of the First National Bank of Keokuk, for which he has paid the said Love in United States .10-40 bonds, $2,000, and 7-30 bonds, $3,000, the said stock will appear upon the books of said bank and certificate No. 46, in the name of said Walker, for fifty shares, amounting to $5,000.

"Now, therefore, said H. K. Love hereby agrees to guaranty to said Walker semi-annual dividends upon said bank stock, at the rate of 7.30 per cent per annum in currency on $3,000, and 5 per cent per annum in specie on $2,000, free from all taxes, said dividends to be due and payable to said Walker on the 15th of August and 15th of February each year. And in consideration of said guaranty the said Love is to have and receive all said bank stock has made, or may hereafter make, over and above 7.30 per cent, and 5 per cent per annum, as above specified. And said Walker hereby assigns to said Love all the earnings of said bank stock over and above 7.30 per cent and 5 per cent per annum, as aforesaid. And said bank is hereby authorized and directed to pay over the same to said Love or his order.

"This agreement, unless extended by mutual consent, will terminate on the 15th day of August, 1867, at which time said Walker is to make over and transfer to said Love the certificate No. 46, calling for fifty shares of stock of the First National Bank of Keokuk, and said Love is to return to him in full payment for the same $2,000 in U. S. 10-40 bonds, and $3,000 in U. S. 7-30 bonds; whereupon the certificate No. 46, above referred to, will be the property of said Love, and the stock will be transferred upon the books of said bank to him. Witness our hands this 24th·day of May, 1866.        "JOEL WALKER,
                                      "H. K. LOVE."

"* * * The time on the within contract is extended to February 15, 1868, at which time the whole $5,000 is

to be paid (without notice) in 5-20 bonds, and interest at the rate of 7.30 in currency per annum.

*August* 14, 1867.        "H. K. Love,

                       "Joel Walker."

A general demurrer to this answer, upon the ground of want of equity, was sustained, and defendant appeals.

*H. H. Trimble* for the appellant.

*R. P. Lowe* for the appellee.

Whether defendant held the stock as vendee or as mortgagee, he is alike liable as a stockholder to the creditors of the bank. This has been repeatedly held by a number of courts, and it cannot be ascertained by much research that any court has decided otherwise. In the authorities to which I refer, the general doctrine on this subject will be found to be as follows:

That in determining who are stockholders in a banking association, the courts will not look beyond the legal title.

A person to whom stock is transferred on the books of the company, and who, upon such books, appears to be the legal owner, is liable to creditors though it was transferred to, and held by him, as collateral security for a debt. *Rosevelt* v. *Brown*, 1 Kern. 148; *Adderly* v. *Storm*, 6 Hill, 624.

A person making the transfer is not the equitable owner in any case of an hypothecation. He may have an equitable interest, but is not, in any proper sense, an owner, for he can neither receive the dividends, vote upon the stock, nor compel a transfer to himself while the debt remains unpaid. *He has precisely the same interest which the purchaser of stock under an executory contract, without a transfer, and before paying the purchase price, would have;* and no one would consider such a purchaser an owner, in any sense, or that he could be assessed as a stockholder. *Matter of the Empire City Bank,* 18 N. Y. 199.

Again, persons to whom stock has been transferred by way of an hypothecation for debts, and in whose names it stands at the time of default, are stockholders, and as such are liable to an equal additional amount for the outstanding debts of the bank. 18 N. Y. 199; *Stanley* v. *Stanley,* 13 Shep. 191.

Again, it was held that those who hold stock as collateral security, or those who hold it in trust, whether the trust does or does not appear on the books of the bank, are liable for the payment of debts and the redemption of unpaid bills, etc. *Crease* v. *Babcock,* 10 Metc. 525; *Grew* v. *Breed,* id. 569.

Once, again, in case of collateral security, the pledgor has no disposing or controlling power, cannot chose directors, cannot be a director, cannot be said to have an interest in the stock, but only a right, on certain terms, to acquire such an interest. 10 Metc. 545, 546.

The defendant, in his answer or cross bill, alleges, among other things, that Love, as president of the bank, effected a loan of his bonds for the benefit of the bank, as well as himself, etc. If this was so, it would not benefit the defendant in the least. His liability as a stockholder would be just the same. The creditor has a right to look to the legal ownership of the stock. This very point was distinctly ruled in the case of *The Empire City Bank,* 18 N. Y. 199, *supra.* The court is particularly requested to examine this case.

He also charges that Love, in making this arrangement with him for the bonds, knew the bank was unsound and practiced a fraud upon him. This can no more be set up as a defense in this action, than fraud in the obtaining of a note can be in the hands of an innocent holder thereof. So it has been held that a stockholder in a banking company cannot set up as an answer, that he was induced to become a shareholder by the fraudulent misrepresentations of the directors as to the financial condition of the company, and

that he repudiated his contract as soon as he became aware of the fraud. *Powers* v. *Harding*, 37 Eng. Law & Eq. 451; *Morris* v. *Royal British Bank*, id. 376; *Daniel* v. *Royal British Bank*, 38 id. 559; *Henderson* v. *Royal British Bank*, id. 86.

Also, in the case of *Kelsal* v. *Marshall*, 1 C. B. (N. S.) 241, it is said, and so ruled, that it is no answer to a rule for an execution against a stockholder in a joint-stock banking company, that the party against whom the execution is sought was induced to become a shareholder by the false and fraudulent representations of the directors as to the solvency of the association. 19 U. S. An. Digest, § 52, p. 100.

DAY, Ch. J. — In section 12 of the act to provide a national currency, " it is enacted that the capital stock of any association formed under the act shall be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of the association; and that every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares; and that the shareholders of each association formed under the provisions of the act shall be held individually responsible for all contracts, debts, and engagements of such association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

1. NATIONAL BANKS: liability of shareholders.

The petition avers " that at the time said bank closed its doors and refused to pay its liabilities, the defendant, Joel Walker, was the transferee of H. K. Love, and owner of fifty shares of stock of $100 each in said bank, * * as will fully appear from the stock books in said bank.", A careful scrutiny of the answer of defendant shows that he does not deny the allegation that he is the transferee

upon the books of the bank of H. K. Love. In one para-
graph of the answer he " denies that at the time the said
banking association closed its door and failed to redeem
its circulation and pay its liabilities, *that the said Joel
Walker became the owner* (as the transferee of H. K. Love,
or otherwise) of fifty shares of stock of $100 each in said
bank." The statement in the petition that Joel Walker
"*was the owner of fifty shares of stock*" is the mere legal
conclusion of the pleader, from the averment of the fact
that he was the transferee of H. K. Love. This conclu-
sion of law, but not the averment of fact, the defendant
denies.

The agreement referred to in the answer as exhibit "B"
states, "that the said Walker has this day *purchased* of the
said Love fifty shares of the First National Bank of Keo-
kuk," and stipulates that "*the said stock will appear upon
the books of said bank and certificate No. 46, in the name
of said Walker for fifty shares, amounting to $5,000.*"

It is quite apparent from the entire answer that the fact
of transfer is conceded, and that the defendant relies for
immunity upon the fact that the transfer was made as
security to defendant for a loan to H. K. Love. The ques-
tion thus presented upon the record, though a new one
here, has been the subject of judicial determination in
some of the sister States. In the case of *Creese et al.* v.
*Babcock et al.*, 10 Metc. 525, it was held, under a statute
containing provisions as to the liability of a shareholder,
substantially the same as those of the one under consider-
ation, that the holder of stock at the time of the dissolu-
tion of the charter, although he held the shares as collat-
eral security, or as trustee for other persons, was individu-
ally responsible for the debt of the corporation. This
doctrine was re-affirmed in the same court in the case of
*Grew* v. *Breed et al.*, 10 Metc. 569, in which it was held,
that those who hold stock as collateral security, and those
who hold it in trust, whether the trust *does* or does not

appear on the books of the bank, are liable for the payment and redemption of unpaid bills.

In *Adderly* v. *Storm*, 6 Hill, 624, it was held, that the transferee of shares of stock, as collateral security, was liable for a debt of the corporation contracted after the debt, as security for which the transfer was made, had been paid, and after a power of attorney had been given to make a re-transfer, but before such re-transfer was executed. In *Roosevelt* v. *Brown*, 1 Kern. 148, the case of *Adderly* v. *Storm* was cited and approved, and the liability of the holder of stock as collateral security re-affirmed.

In the matter of *The Empire City Bank*, 18 N. Y. 199, the same doctrine was announced. We have been referred to no adjudication at variance with these cases.

Counsel for appellant concede their correctness, but claim that they are not applicable to this case. We are unable to distinguish them in principle from the case under consideration. In *Crees et al.* v. *Babcock et al.* a plea and answer strikingly similar to the answer in this case were held to constitute no defense. The doctrine of these cases will doubtless work a hardship in some instances; yet this hardship is *particular* while that of the converse doctrine would be *general*. As was said in *Adderly* v. *Storm*, "if we depart from the terms of the law, and inquire into the equities which may exist between the stockholder and some third person, it cannot fail to embarrass creditors in seeking a remedy for the wrongs which may be done by the corporation. If creditors must look beyond the legal title, they can never know against whom to proceed."

It is urged that the defendant should be exonerated in consequence of the fraud of Love.

No such allegation of fraud is contained in the answer, as will enable the defendant to rely upon it as a substantive
2. PLEADING: ground of defense. The answer alleges in
fraud.          general terms that "if by any construction or intendment of law the said instrument shall seem to hold

this defendant to be a purchaser and not a mortgagee of said stock, then said instrument, so set forth, which was then and there written by said Love, was either false and fraudulently so written or so done by mistake." The answer does not state that any provision has been fraudulently incorporated into or omitted from said contract. The averment is simply that, if certain legal consequences flow from the agreement, the agreement was by fraud *or mistake* so written as to admit of these consequences. The agreement is signed by defendant. It is not averred that he was not fully advised of its entire contents at the time of signing it, nor that he supposed it contained any provision variant in any respect from what its terms now import. That he was mistaken as to its legal effect may well be admitted. And that Love was aware of such legal effect, and failed to disclose the same to defendant, may also be conceded. But this mistake and this concealment of matter of law afford the defendant no ground of relief. *Ignorantia legis nominem excusat.* In order to admit evidence of fraud there should, under our system of pleadings, be at least a general statement of the facts constituting the fraud.

The averment in the answer, that if the stock books of the association contain the entries set out in the petition, the said entries are untrue and fraudulently made, is neutralized and avoided by the stipulation in the agreement, made part of the answer, and marked exhibit " B," that the said stock shall appear on the books of the bank in the name of said Walker.

Our attention has been directed to section 40 of the currency act, which provides: " That the president and cashier of every such association shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the association and the number of shares held by each, in the office where its business is transacted; and such list shall be subject to the inspection of all the shareholders and creditors of the association,

and the officers authorized to assess taxes under State authority, during business hours of each day in which business may be legally transacted, and a copy of such list, on the first Monday in July in each year, verified by the oath of such president or cashier, shall be transmitted to the comptroller of the currency."

We do not believe the provisions of this section affect the question of the defendant's liability. The evident purpose of this section is to furnish persons interested facilities for determining who are shareholders. A failure upon the part of the officers of the bank to comply with it surely would not exonerate from liability persons otherwise chargeable as shareholders. If so, through the mere misfeasance or malfeasance of the president and cashier, parties might reap all the benefits without being chargeable with any of the burdens of the association.

In our opinion the demurrer was properly sustained.

Affirmed.