[No. 4701.]

ADAMS ET AL. v. CLARK ET AL.

1.  Practice in Civil Cases—Corporations—Liability of Bank Stockholders—Suit in Equity.

1 Mills Ann. St. §533 provides that share holders in banks shall be individually responsible for debts, contracts, and engagements thereof, in double the amount of the par value of the stock owned by them respectively. Held, that the proper procedure to enforce such liability is by a suit in equity by a creditor or creditors for the benefit of all the creditors, and against all the stockholders.—P. 72.

2.  Same—Civil Code—Legal and Equitable Actions—Attachment.

Under the Civil Code of Colorado the same court can administer legal or equitable relief, or both, and in an action,

whether legal or equitable, upon a contract for recovery of a definite, fixed and certain amount of money, plaintiff is entitled to a writ of attachment in aid thereof, upon compliance with the terms imposed by the code with reference to the issuance of such writ.—P. 72.

3. Corporations—Banks—Insolvency — Stockholders Liability— Stock Pledged—Ctock Books.

1 Mills Ann. St. §495 provides that no person holding stock in any corporation as collateral security shall be personally subject to any liability as a stockholder of such corporation, but the person pledging the stock shall be considered as holding the same. Held, that where certain stock of an insolvent bank stood in the name of another bank as owner, and there was nothing upon the face of the certificate or the books of the bank in anywise qualifying this ownership of stock, or indicating that the same was held as collateral security, the bank holding such stock cannot escape the double liability imposed by 1 Mills Ann. St. §533, on the ground that it held the stock as collateral security. —P. 74.

4. Constitutional Law—Statutes—Passage — Journal Entries— Presumptions.

§26, art. 5, of the constitution of Colorado, provides that the presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the general assembly after their title shall have been publicly read immediately before signing, and the fact of signing shall be entered on the journal. Held, that the mere fact that a bill or joint resolution was signed by the presiding officer of the house or senate is the only matter which is required to be made a matter of journal record, and this section of the constitution does not require that the journal should show that the bill was signed in the presence of the house or senate immediately after its title had been publicly read. And where the senate journal was silent as to whether the title of a bill was so publicly read, it will be presumed that such constitutional requirement was complied with.—P. 87.

5. Appellate Practice—Pleading—Demurrer—Defect of Parties —Waiver by Pleading Over.

Where defendant's demurrer to a complaint, on the ground of defect of parties, was over-ruled, and the defendants thereupon answered, they thereby waived the right to raise such question on appeal.—P. 90.

Jan.,'06.]        ADAMS v. CLARK.        .        67

6.  Practice in Civil Cases—Parties—Suit by One for the Benefit
    of Others—Permission of Court—Motion to Strike Com-
    plaint.

    §12, Mills Ann. Code, provides that when the parties are
numerous and it is impracticable to bring them all before the
court, one or more may sue or defend for the benefit of all and a
court may make an order that the action be so prosecuted or de-
fended. Held, that such provision as to order of the court is not
mandatory, and is not jurisdictional, and that an order denying
a motion to strike the complaint from the files, on the ground
that such order had not been made, operated to correctly permit
an action to be prosecuted in the form in which it had been com-
menced.—P. 90.

7.  Pleading—Replication—Denial—Information and Belief.

    §56 of Mills Ann. Code authorizes the denial of matters not
presumptively within the knowledge of the party making the
same by an allegation that the party has not and cannot obtain
sufficient knowledge or information upon which to base a belief.
Held, that where defendants pleaded that a certain statute relied
on never was the law of the state because not enacted and signed
in the manner prescribed by the constitution, such allegation did
not raise matters which were presumptively within plaintiff's
knowledge, and hence a denial in the above form constituted a
sufficient reply.—P. 91.

8.  Same—Affirmative Matter—Failure to Reply—Matters Ad-
    mitted—Validity of Statutes.

    The invalidity of a statute, on the ground that it was not
passed in the manner required by the constitution, is not a mat-
ter which the plaintiff can admit by failing to deny in his reply
an allegation to that effect in the answer.—P. 92.

9.  Corporations—Banks — Stockholders — Statutory Liability —
    Evidence—Stock Ledger.

    In an action to recover the statutory liability of alleged
stockholders of an insolvent bank, the stock ledger of such bank,
identified and supported by the testimony of the ex-cashier of
the bank, was competent and sufficient evidence to prove that
appellants were stockholders of the insolvent bank.—P. 92.

10.  Same—Banks—Stockholders—Extent of Liability—Interest.

    1 Mills Ann St. §533 provides that stockholders in banks
shall be individually responsible for debts thereof in double the
amount of the par value of the stock owned by them. Held, that
the maximum liability to which such stockholders are liable to
creditors, is double the amount of the par value of their stock
without interest.—P. 93.

*Appeal from the District Court of Mesa County.*
*Hon. Theron Stevens, Judge.*

Action by D. T. Clark, on behalf of himself and all other creditors of the Colorado State Bank of Grand Junction similarly situated, against Alva Adams, Bank of Commerce of Salt Lake City, A. C. Grout, Wm. M. McGinley, A. A. Miller, John Shields, Walter S. Sullivan and W. W. Huntington. From a judgment for plaintiff, defendants appeal.

Decision *en banc.* *Modified and affirmed.*

Mr. C. F. Caswell, Mr. S. G. McMullin, Mr. Guy V. Sternberg, Mr. S. M. Wheeler, Mr. S. M. Logan, and Mr. S. D. Walling, for appellants.

Mr. J. S. Carnahan and Messrs. Tolles & Cobbey, for appellees.

Mr. Justice Maxwell delivered the opinion of the court:

This is an equitable action brought by D. T. Clark on behalf of himself and all other creditors of The Colorado State Bank of Grand Junction, similarly situated, against appellants as stockholders of said bank, to enforce the statutory liability imposed by 1 Mills' Ann. Stats., sec. 533, Laws 1885, page 264, sec. 1.

"Shareholders in banks, savings banks, trust, deposit and security associations, shall be held individually responsible for debts, contracts and engagements of said associations, in double the amount of the par value of the stock owned by them respectively."

The insolvent bank was incorporated under the laws of Colorado October 1, 1897, and immediately thereafter opened for business as a banking corpo-

ration, and continued in such business until on or about January 4, 1902, at which time it made an assignment of all its assets to W. T. Dowrey, who subsequently resigned as assignee, and was succeeded by W. C. McCurdy, who was acting as assignee at the time of the commencement of this suit.

The case was tried to the court, and judgment rendered against appellants for double the amount of the par value of stock owned by each respectively, and interest thereon.

The original complaint, filed July 26, 1902, alleged in substance that plaintiff, Clark, was a creditor of the insolvent bank; that he brings this action in behalf of himself and all other creditors of the bank similarly situated; the incorporation of the bank; that the bank, having become insolvent, made an assignment to Dowrey; the resignation of Dowrey and the succession of McCurdy in the assigneeship; that plaintiff had filed his claim with the assignee, which had been duly allowed, and that about 25 per cent. thereof had been paid; that the indebtedness from the bank arose by virtue of deposits in the bank made by plaintiff at the time defendants were stockholders thereof; that the amount of his deposits remaining in the bank at the date of its failure was $19.50; the statute under which the liability of defendants accrued, a list of the stockholders and the number of shares held by each; that the capital stock of the bank was $30,000.00, divided into 300 shares of the par value of 100.00 each; that the aggregate liabilities of the bank were about $225,-000.00; that the defendants are all the stockholders.

The list of stockholders set forth in the complaint and the holdings thereof totaled 300 shares.

Subsequently the complaint was amended by interlineation, by inserting the words and figures, "$1,948.66," in lieu of "$19.50."

August 9, 1902, a supplemental complaint was filed, in and by which other creditors of the bank, holding claims to the amount of about $25,000.00, were brought in and made parties plaintiff.

August 15, 1902, the following affidavit in attachment was filed:

"Thomas D. Cobbey of said county, being duly sworn, doth depose and say that he is one of the attorneys for plaintiffs, and that The Bank of Commerce of Salt Lake City, against whom the said plaintiffs are about to sue out an attachment, are indebted to them in a sum not exceeding five thousand dollars ($5,000.00), and is upon a contractual obligation, the said Bank of Commerce being the owner of two thousand five hundred dollars' worth, face value, of the capital stock of The Colorado State Bank of Grand Junction, said bank having failed and gone into the hands of an assignee about the 5th day of January, 1902. That the liability of said Bank of Commerce is five thousand dollars, as provided by the statutes of Colorado, laws of 1885, at page 264, and affiant further alleges that the defendant is a corporation whose chief office or place of business is out of the state."

A writ of attachment was thereupon issued against the property of The Bank of Commerce of the city of Salt Lake, appellant, a garnishee summons served on The First National Bank of Denver, which answered that it was indebted to The Bank of Commerce in the sum of $6,000.00.

The appellant Bank of Commerce moved to quash the writ of attachment upon six grounds, which may be summarized as follows:

1. That the action is not upon a contract, express or implied.

2. That the action, if any exists, is in equity, and not at law.

It becomes necessary, therefore, to determine the nature and character of the superadded statutory liability of stockholders imposed by virtue of the statute above quoted.

The authorities are not in accord upon this proposition. The greater weight, however, hold that every person who becomes a stockholder in a corporation, designated in the statute under consideration, becomes such stockholder subject to the terms of the statute, which is a part of the charter of the corporation; that he thereby contracts with reference thereto and with the creditors of the corporation, that he will be liable for its debts to the limit fixed by the statute. This liability, unlike the liability imposed by the statute upon directors or officers of a corporation for its debts, because of their fraud or negligence in the management of the affairs of the corporation, is not penal in its nature —to be regarded as a purely statutory liability—it is a liability voluntarily assumed by the act of becoming a stockholder, and an obligation thus assumed is purely contractual, contains all the elements of a contract, and is to be enforced as such.

In *Hill v. Graham,* 11 Colo. App. 536, 544, in discussing the liability of national bank stockholders, it is said:

"We may, therefore, take it as thoroughly well established that this stock liability is one of contract; that it has its inception at the time the insolvent corporation contracts the debts; that an assessment may be levied or an action may be brought and payment coerced out of the fund resulting from the levy or in the suit to enforce the stock liability. There is no apparent difference in the two cases."

A few of the authorities supporting this position are cited.—*Richmond v. Irons,* 121 U. S. 27;

*Corning v. McCullough,* 1 Comstock 47; *Norris v. Wrenschall,* 34 Md. 492; *Brown v. Hitchcock,* 36 Ohio St. 667; *Hawthorne v. Calef,* 2 Wall. 10.

Having arrived at the conclusion that the stockholders' liability sought to be enforced in this action is upon contract, it follows that the first ground of the motion to quash the writ of attachment is not well taken.

It is settled in this jurisdiction, by *Zang v. Wyant,* 25 Colo. 551, that the proper procedure to enforce the liability of stockholders in an insolvent bank, for debts of the corporation under the statute here under consideration, is by a suit in equity by a creditor or creditors for the benefit of all the creditors and against all the stockholders.

In support of the second ground of the motion to quash the writ of attachment the argument of counsel for appellant is that, although section 1, Mills' Ann. Code, abolished the distinction between legal and equitable actions and substituted therefor the one action by complaint, nevertheless the distinctions, rules and principles applicable to legal rights and remedies and equitable rights and remedies, as theretofore distinguished, are unaffected by such abolishment of forms, and, therefore, attachment being a purely legal remedy, cannot be invoked in an equitable proceeding.

With this contention we do not agree.

Under our Code, the same court possesses both law and equity jurisdiction, and hence is competent to take cognizance alike of legal and equitable rights, and to administer legal remedies, or grant equitable relief, or do both, as the nature of the case may require, and as may be permitted by the Code.

This is manifest from section 59, which permits the defendant to plead legal and equitable de-

fenses, and section 70, which provides that in all cases equitable relief may be granted.

While it is true that the proceeding by attachment is not the proper remedy for the ascertainment and determination of a purely equitable right, nevertheless it does not necessarily follow that, in a proceeding in its nature equitable, for the recovery of a definite sum of money upon a contract, an attachment will not lie. To so hold would be to limit the right to the writ of attachment to one form of action. There is no such limitation in the Code, which provides, in general terms, that an attachment may issue "in an action on contract express or implied," so that it would seem to follow without question that in an action, whether legal or equitable, upon a contract, for recovery of a definite, fixed and certain amount of money, the plaintiff will be entitled to a writ of attachment in aid thereof, upon compliance with the terms imposed by the Code with reference to the issuing of such writ. Otherwise, the statutory right of creditors to proceed against all the stockholders of an insolvent bank would be limited to the resident stockholders and those whose property and person were within the jurisdiction of the court of the domicile of the corporation, who would be required to respond to their liability to the utmost farthing, while the non-resident stockholders, although owning property within the jurisdiction of the court, having enjoyed all the benefits arising from the relation of stockholder, would escape the liability imposed by the statute.

The following cases, with Code provisions similar to those of this state, have sustained the right to a writ of attachment in proceedings to enforce the statutory liability of stockholders.—*Kennedy v. Cal. Savings Bank,* 97 Cal. 93; *Harper v. Carroll,* 66 Minn. 487; *Hanson v. Davison,* 73 Minn. 454.

The appellant Bank of Commerce defended upon the ground, *inter alia,* that it held its stock as collateral security, and therefore was not liable as a stockholder.

It is uncontradicted that a certificate for 25 shares of the capital stock of the insolvent bank was issued and delivered to appellant at its request in the name, "Bank of Commerce, Salt Lake City"; that it receipted for such certificate in that name; that its name, as above, appears on the stock ledger of the insolvent bank as the owner of such stock; that it voted by proxy at one or more meetings of the stockholders of the bank; that there is nothing upon the face of the certificate or the books of the bank in anywise qualifying this ownership of the stock, or indicating that it held the same as collateral security.

Thus the question is squarely presented, May a person hold stock in a corporation under the laws of this state, as collateral security, with nothing upon the face of the certificate or the books of the corporation to indicate that he holds it in such capacity or character, and escape the liability of a stockholder?

The statute involved is 1 Mills' Ann. Stats., section 495.

"No person holding stock in any corporation as executor, administrator, conservator, guardian or trustee, and no person holding such stock as collateral security, shall be personally subject to any liability as stockholder of such corporation, but the person pledging such stock shall be considered as holding the same, and funds in the hands of such executor, administrator, conservator, guardian or trustee shall be liable in like manner, and to the same extent, as the testator or intestate, or the ward or person interested in such trust funds, would have

been if he had been living and had been competent to act, and hold the stock in his own name.''

The general rule as to the liability of a pledgee of corporate stock is thus stated by Cook, in his work on Stock and Stockholders, volume 1, section 247:

''A pledgee of stock, that is, one to whom the stock has been transferred in pledge or as collateral security, and who has had the stock transferred into his own name on the books of the company, is liable to the creditors of the corporation as though he were the absolute owner of the stock. This rule has frequently been enforced in the case of the pledge of shares of stock in a national bank. If, however, the stock has been entered on the corporate books not in the name of the pledgee but in the name of a ''dummy,'' the pledgee is not liable thereon. The statute frequently relieves the pledgee.''

And, in Clark & Marshall on Corporations, volume 3, page 2548:

''In the absence of statutory provision to the contrary, a person who appears on the books of a corporation as a stockholder is liable as such to creditors, although the stock may have been transferred to him merely as collateral security.''

And, in 2 Morawetz on Private Corporations, § 852:

''It has accordingly been held that the creditors of a corporation are entitled to hold every legal owner of shares liable as a shareholder, without regard to equities existing between him and third persons, and may enforce not only the liability of such shareholder to contribute the portion of the capital subscribed by him to the company, but also any further liability to creditors imposed by statute. This rule has been enforced against trustees holding shares for the benefit of others, and against persons to

whom shares have been transferred as collateral security for a claim against the prior holder.''

The authors above quoted cite numerous authorities in support of the principles announced, to which reference is made, without citation here.

The argument of counsel for appellant is based upon statements made by the authors above quoted, to the following effect:

''A statute frequently relieves the pledgee.'' —Cook, § 247.

''Statutes have been passed in some of the states making the equitable owner of shares liable in place of the legal holders.''—Morawetz, § 854.

''In some jurisdictions it is expressly provided by statute that persons holding stock merely as collateral security shall not be liable as stockholders, but that the pledgor shall be liable, and under such a provision it has been held that a person who has taken a transfer of stock, absolute on its face, may escape liability to creditors by showing that the transfer was in fact as collateral security merely.'' —3 Clark & Marshall, Private Corporations, p. 2550.

The authorities cited by the above authors in support of the doctrine announced in the last quotations are those relied upon by counsel for appellant, and are decisions in cases arising under the statutes of New York, Maryland and Missouri.

The statutes of Missouri, Maryland and New York are substantially the same as the statute of Colorado.—1 Mills' Ann. Stats., sec. 495, *supra.*

Counsel concede that the general rule is as stated by the above authors, but contend that the general rule and the authorities cited in support thereof are inapplicable to a case arising under the Colorado statute, and that the only authorities which are applicable to the case under consideration are

those arising under similar statutes, to wit, the statutes of New York, Missouri and Maryland.

Counsel for appellant thus state their position in their printed brief, after quoting the exception to the general rule as stated by Clark & Marshall in the last above quotation from that author:

"This draws the distinction and shows that, where statutes exempt the holder of stock as collateral security from liability, he may show that he does hold it as collateral security, and when he has shown that he so holds it, he presents a complete defense to an action instituted by a creditor against him to recover upon the basis of his being a stockholder. The doctrine has been announced in Maryland, the doctrine has been announced in New York, the doctrine has been announced in Missouri. The statutes in these states are to all intents and purposes identical with the statute now under consideration. The supreme court of the United States has construed the statute of Missouri to mean what it says, and to be effectual to exempt from liability an individual who owns stock as collateral. Colorado has a statute which is now before the court for consideration and construction, and it is not unreasonable for us to expect that this court will give to that statute the same construction which has been given to statutes of the same import in Maryland, New York and Missouri by the courts of those states, and by the supreme court of the United States."

An examination of the authorities cited by the authors in support of the exception, and by counsel in support of their argument, leads us to the conclusion that the cases cited from the United States supreme court, Maryland and Missouri do not support the principle announced.

*Burgess v. Seligman,* 100 U. S. 20, upon which much reliance is placed, was an action by a creditor

of an insolvent railroad corporation, incorporated under the laws of Missouri, to enforce the statutory liability imposed upon stockholders. The pertinent facts found by the court were: That the defendants held stock by direct issue from the corporation under a trust as security for money advanced to the corporation; that the stock transfer book of the corporation showed that the stock was "held in escrow"; that plaintiff had actual notice and knowledge of the manner in which, and the purposes for which, the defendants held the stock; and that plaintiff had derived a benefit from the transaction between the defendants and the corporation.

Under the above state of facts, the court decided that one who "held in escrow" the stock of a corporation, that fact appearing upon the books of the corporation, such stock being issued directly to the stockholder, in trust, to secure the debt of the corporation, was not a stockholder, and could not be held as a stockholder under the Missouri statute. The facts clearly distinguish this case from the case at bar.

*Union Savings Association v. Seligman,* 92 Mo. 635 (overruling *Griswold v. Seligman,* 72 Mo. 110 and cases following it), was a case growing out of practically the same transaction involved and decided in *Burgess v. Seligman, supra,* and for the reasons above stated must be held to be entirely inapplicable to the case under consideration.

The Maryland case relied on is *Matthews v. Albert,* 24 Md. 527. It appears from the opinion that Tiernan, who claimed exemption from the liability of a stockholder, had loaned money to the company, taking as security for the payment of the loan a certificate of stock of the company, issued directly to him by the company, upon which certificate an endorsement was made by the president of the cor-

poration to the effect that it had been issued to Tiernan as collateral security for the loan. Thus, it plainly appears from this statement of facts that Tiernan was a creditor of the corporation on account of money loaned to it, and that he held the stock upon which he was sought to be made liable as a stockholder, as collateral security for a loan, which fact appeared upon the face of the certificate. Upon this point the opinion says:

"The claim of W. H. Tiernan is for $2,000, money alleged to be loaned to the company on the 8th of January, 1859, and is proved by James C. Berry; but it is insisted by the appellees that Tiernan, instead of being a non-stockholder creditor, is, according to the evidence, a stockholder, and as much liable as the Alberts. We do not concur in this view of the relation of Tiernan to the company. In our opinion, his claim is for money loaned, and the stock transferred to him was held by him as collateral security for his loan, and so holding it, he is not personally subject to any liability as a stockholder, but is protected by the provision of the 12th section of the act of 1892, chapter 338."

Thus it is seen the facts in the last case clearly distinguish it from the case under consideration, so that the authorities cited by the authors from the United States supreme court, Maryland and Missouri in support of the exception stated and relied upon by appellants, are not in point.

The only case cited by counsel under a statute similar to the statute of this state, which appears to support their contention, is *McMahon v. Macey,* 51 N. Y. 155, where it is said:

"Section 11 of the general railroad act of 1850 provides that no person holding stock in a railroad company as collateral security shall be personally liable as a stockholder, but the person pledging the

stock shall have the liability as stockholder. Under this law, the evidence that the stock in question was assigned to the defendant as collateral security should have been received and considered, and should have secured to the defendant exemption from liability on account of the stock.''

No authorities are cited in support of this conclusion, which might be classed as *obiter dictum*, and it is certainly against the overwhelming weight of authority in this country.

Judge Thompson, in his work on Corporations, at § 2937, thus criticises the above case:

''But the late commission of appeals of New York held that a person who received a transfer of the stock of another as collateral security for a debt due by the latter, could not be held liable as a shareholder to a creditor in a direct action given by a statute to the creditor against the shareholder, although his name appeared on the books of the company as absolute owner. The opinion of Commissioner Earl proceeds on the analogy of the rule that it is competent to show that an assignment or conveyance, absolute in form, was intended only as a security. He adds that 'there is nothing in any statute which makes the books of the company the incontrovertible evidence of ownership of stock.' It is doubtful whether this is to be regarded as more than an expression of opinion by a single judge. But, however it is to be viewed, it is a plain judicial aberration. Nothing is better settled in the law of corporations than that the stockholder whose name appears on the books of the corporation with his own consent is absolutely bound in the character which he thus assumes, both to the company and to its creditors.''

We believe that counsel have entirely misconceived the intention and purpose of the statute of

this state and of New York, Maryland and Missouri, now under consideration.

The general rule of law is, that the members of a corporation are not liable for its debts or torts, except to make good the amount due to the corporation for its shares, unless made so by constitutional or statutory enactment. The members of a corporation are its shareholders, its stockholders, those who appear upon the books of the corporation in such character or capacity.

"The trustee of stock who is recorded on the corporation books as a stockholder is, by common law, liable on such stock as though he were the absolute owner of the same. This is the rule, even though he is recorded on the corporation books not as the absolute owner but as a trustee of stock." —Cook on Stock, § 245.

The same rule as that last quoted would apply to the other classes of holders of stock designated in the statute under consideration.

The earlier statutes imposed a liability upon all stockholders or shareholders, without regard to the capacity in which they might be holders of stock or shares. In this regard they follow the rule at common law, as above stated by Cook.

The intention of the statutes under consideration was to relieve persons holding stock in a fiduciary capacity from personal liability imposed by the common law and the earlier statutes in this country, and place such liability upon the owner of the legal and not the equitable title to the stock—that is, upon the *cestui que trust,* or the estate of the testator, intestate, ward or pledgor, as the case may be.

Section 533, 1 Mills' Ann. Stats., *supra,* having imposed the liability upon shareholders or holders of shares as distinguished from the owners of shares, those who hold as trustees, etc., or as pledgees, to

avail themselves of the exemption provided by 1 Mills' Ann. Stats., section 495, must comply with the statute as enacted. This being true, according to the terms of the statute the stock must be held *as trustee* or *as collateral security*, that is, in the character of trustee or pledgee, and, unless the stock is so held and that fact appears upon the books of the company, the holder will not be exempt from the liability imposed by the statute.

In those jurisdictions where statutes have been enacted providing that persons holding shares as executors, administrators, conservators, guardians or trustees shall not be subject to liability as stockholders, it is held that, to protect such persons from personal liability, it must appear on the books of the corporation that the holding is in such capacity. —*Davis v. First Baptist Society,* 44 Conn. 582, No. 3633 Federal Cases; *Sherwood v. Illinois Trust & Savings Bank,* 195 Ill. 118; *Pullman v. Upton,* 96 U. S. 33.

In *Davis v. First Baptist Society,* it is said:

"Creditors have a right to know who have pledged their individual liability. If trusteeship does not appear upon the books of the bank, they have a right to infer that the stockholder is personally liable. If a trustee wishes to disclose his trusteeship, there is no difficulty in giving notice upon the books of the bank. If he does not disclose his trusteeship, he is guilty of laches, for which others should not suffer. The settlement of the affairs of an insolvent bank would be rendered a matter of great labor, expense and delay if persons who appeared upon the books of the bank as individual stockholders were permitted to relieve themselves by proving that they held the stock as executors, or guardians, or trustees." (Citing *Adderly v. Storm,*

6 Hill 628; *Stover v. Flach,* 30 N. Y. 64; *Creese v. Babcock,* 10 Met. 525; *Hale v. Walker,* 31 Iowa 344.

The statute of this state and like statutes merely add the pledgee of stock to the other classes of persons mentioned in the federal statutes, and the statutes of all the states of like import.

It follows that the general rule announced by the text writers above quoted and the federal and state courts, to which we have found no exception, that a person whose name rightfully appears on the books of a corporation is a shareholder, and must respond as such to all the statutory liabilities imposed upon shareholders, applies with full force to those holding stock as collateral security, unless it appears on the books of the corporation that the stock is so held.

This conclusion is supported by the United States supreme court in *Pauly v. State Loan and Trust Co.,* 165 U. S. 606, a case cited by counsel for appellant bank, which was an action to recover an assessment made on the shareholders of a national banking association, and therefore involved a construction of the federal statutes. It appeared that the defendant trust company was a holder, *as pledgee,* of shares of stock of the California National Bank of San Diego. The opinion, written by Mr. Justice Harlan, is an exhaustive and learned review and analysis of all the authorities, federal and state, bearing upon the question under consideration. The conclusion arrived at by the court is:

"That if the owner transfers his shares to another person as collateral security for a debt due to the latter from such owner, and if, by the direction or with the knowledge of the pledgee, the shares are placed on the books of the association in such way as to imply that the pledgee is the real owner, then the pledgee may be treated as a shareholder

within the meaning of section 5151 of the Revised
Statutes of the United States, and therefore liable
upon the basis prescribed by that section for the
contracts, debts and engagements of the associa-
tion.''

After a discussion of the relations existing be-
tween pledgor and pledgee, the opinion proceeds:

''Does the statute in letter or spirit require that
the word 'pledgee,' appended to the name of the
party to whom certificates 308 and 309 were issued,
should be entirely ignored? Is the holder of such
certificates in no better condition, in respect of lia-
bility as a shareholder, than if such list had im-
ported absolute ownership in the transferee?''

The conclusion of the court is stated as follows:

''Our conclusion is, that the defendant in error
cannot be regarded otherwise than as a pledgee of
the stock in question, is not a shareholder within the
meaning of section 5151 of the Revised Statutes, and
is not, therefore, subject to the liability imposed
upon the shareholders of national banking associa-
tions by that section.''

In *Rankin v. Fidelity Trust Company,* 189 U. S.
242, which was an action by the receiver of a na-
tional bank to recover an assessment upon the share-
holders of a bank, pursuant to United States Re-
vised Statutes, section 5151, it was held that a mere
pledgee who receives from his debtor a transfer of
shares, surrenders the certificate of the bank and
takes out new ones in his own name in which he is
described as pledgee, and holds them as collateral
security for the payment of his debt, is not subject
to personal liability as a shareholder, but it is other-
wise if he allows his name to appear on the books
as owner.

*Hurlburt v. Arthur,* 140 Cal. 103, 73 P. 734, de-
cided September 4, 1903, under a statute substan-

tially the same as the statute here under considera-
tion, was a case by creditors to enforce statutory
liability of stockholders. The court says:

"The only question presented on this appeal is,
whether in this state one who, upon the books of a
banking corporation appears as a stockholder may
show, to escape his statutory liability to its credit-
ors—depositors, in this instance—that he was not in
fact the owner of the stock, but held it merely as
collateral security."

Its conclusion is:

"And the general rule upon this subject is, that
in the absence of an express statute to the contrary,
the liability to pay calls and to respond to creditors
in the event of insolvency of the corporation attaches
to the holder of the legal title to the stock, and the
courts will not look beyond the registered share-
holder, nor inquire under what equity he holds, and
so one who takes stock as collateral security and has
it transferred to himself and so registered on the
books of the company, will be liable to the creditors.
(Citing a large number of authorities.)  Some of
these cases cited have reference to claims of non-
liability by persons who were in fact trustees, al-
though they did not so appear upon the books of the
company. They were, nevertheless, held liable, and
the same reasoning which would apply in such cases
is equally applicable to persons claiming exemption
from liability as pledgees under our section of the
Code, because any immunity from liability which is
there given to trustees is equally extended to pledg-
ees; they both stand upon the same legal plane in
this respect."

Counsel for appellant criticise this case, saying
that the expressions above quoted are purely *obiter,*
and that the court failed to discriminate between the
two classes of cases which they have presented to

this court. In other language, that the California court fails to make the distinction which counsel so earnestly and ably insist exists.

In both positions counsel are in error. As shown by the quotation, the expressions of the court were upon the only point in the case, and, further, it is apparent from the opinion that the same distinction urged by learned counsel here was presented to the supreme court of California, by that court considered, and the conclusion reached that no such distinction exists, in which conclusion we concur; from which it follows that, under the uncontradicted facts in this case, briefly stated above, although the appellant held the stock as collateral security, nevertheless it must suffer the penalty which the law imposes upon a pledgee who fails to show, upon the books of a corporation, what the real transaction was.

It is contended by all appellants:

1. That section 533, 1 Mills' Ann. Stats., *supra,* was not passed in conformity with the constitutional requirements, and is therefore void.

The statute in question was passed by the general assembly of 1885, and was known as House Bill No. 243.

"A bill for an act to fix and define the liability of shareholders in banks, trust, deposit and security associations," approved March 25, 1885, Session Laws 1885, page 264.

The printed journal of the senate for the session of the general assembly of 1885, of date March 23, 1885, at page 1136, contains the following, as appears by the abstract of record in this case:

"H. B. No. 243.

"A bill for an act to fix and define the liability of shareholders in banks, savings banks, trust, deposit or security associations. Was read the third

time. The question being, shall the bill pass? The roll was called, with the following result: Yeas, 21 senators. Nays, none. Absent and excused, 2. Absent and not voting, 3. So the bill passed. The title was read and agreed to.''

At page 1174 of the senate journal, under date March 25, 1885, as follows: ''The lieutenant governor announced that he had signed House Bill No. 243, an act to fix and define the liability of shareholders in banks, savings banks, trust, deposit or security associations.''.

Section 26, article V of the constitution of Colorado, invoked by counsel in support of their position that the act in question was not passed according to the requirements of the constitution, is:

''The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the general assembly after their title shall have been publicly read, immediately before signing; and the fact of signing shall be entered on the journal.''

It is contended that it conclusively and affirmatively appears, from the above extract from the journal of the senate, that the signature of the lieutenant governor to the above bill was not affixed thereto by him in the presence of the house over which he presided, after the title of the bill had been publicly read, immediately before the signing.

*In re Roberts,* 5 Colo. 525, 535, this court said:

''The requirement of section 26 (article V) that the fact of the signing of a bill by the presiding officer in the presence of the house over which he presides 'shall be entered on the journal' is directory, and, in the silence of the journal, it will be presumed that the bill was so signed.''

Counsel contend that the above is *dictum,* and that subsequent decisions of this court have either

overruled or disregarded the ruling in the *Roberts case.*

No decision of this court has been cited; and we know of none, wherein the decision of the court in the *Roberts case* upon these points has been overruled, disregarded or in any wise criticised.

However, we do not agree with counsel in their contention that section 26, article V, *supra,* requires that the fact of signing in the presence of each house immediately after the title of the bill has been read, is required by the mandatory provisions of the constitution to be made a matter of journal record. In other words, the mere fact that the bill or joint resolution was signed by the presiding officer of the house or senate, is the only matter which is required to be made a matter of journal record.

The section of the constitution under consideration does not require that the journal should show that the bill was signed in the presence of the house and senate immediately after its title had been publicly read.

In *Insurance Co. v. Loan Co.,* 20 Colo. 1, 5, in discussing the effect of a failure of the journal to show that the bill had been read at length on three different days (section 22, article V), this court said:

"Although the journal does not show affirmatively that the bill was read at length upon three different days in the senate, it does show that it was read a first and third time. It could not have been read a third time, unless there had been a second reading. Aside from this, merely negative evidence is not sufficient to impeach the enrolled act duly signed and authenticated by the proper officers and lodged in the office of the secretary of state. Judge Cooley, in his work on Constitutional Limitations, page 167, says, in speaking of a similar provision: 'The journals which each house keeps of its pro-

ceedings ought to show whether this rule is complied with or not; but in case they do not, the passage in the manner provided by the constitution must be presumed, in accordance with the general rule which presumes the proper discharge of official duty.' See, also, *In re Roberts,* 5 Colo. 525, and cases cited. The above from Mr. Cooley is a clear statement of the law applicable in the absence of a mandatory provision of the constitution requiring the fact to be made a matter of journal record.''

*In re Roberts,* at page 534, this court said:

''If the records are silent touching the compliance with the constitutional requirement, there is a presumption of right action in favor of a body acting under oath to support the constitution,'' citing cases.

And in *Andrews v. The People,* 33 Colo. 193, 199:

''In determining whether the constitutional requirements with respect to the passage of bills have been complied with, resort can be had to the legislative journals. If it affirmatively appears therefrom, either expressly or by necessary implication, that the provisions of the constitution were not observed, then the bill is not valid. If, however, they are merely silent on this question, it must be presumed that the fundamental law on the subject of the passage of bills was in all respects followed.—*Insurance Co. v. Loan Co.,* 20 Colo. 1; *In re Roberts,* 5 Colo. 525; *State ex rel. v. Francis,* 26 Kan. 724.''

Under the above rules we conclude that, the record being silent as to whether the title of the bill was publicly read immediately before it was signed in the presence of the senate by the lieutenant governor—section 26, article V not requiring that the journal record should so state—the presumption is, that the constitutional requirement was complied

with, and the contention of counsel that section 533, 1 Mills' Ann. Stats., is invalid and void, is untenable.

2.   It is said by appellants that the complaint is insufficient in that it does not allege the insolvency of the bank; that it does not appear therefrom that the defendants are all of the stockholders of the bank, nor that the assets of the bank are insufficient to meet its liabilities.

While the complaint is not a model, we do not think that the objection is well taken.  The complaint herein is framed along the lines of the complaint in *Zang v. Wyant,* 25 Colo. 551, which was there held sufficient.

3.   It is insisted that the assignee of the insolvent bank should have been made a party defendant.

Defendants' demurrer to the complaint was upon the ground, *inter alia,* defect of parties.  This demurrer was overruled.  Defendants answered over, and thereby waived the right to raise this question on appeal.—*Zang v. Wyant, supra.*

4.   The court overruled the motion of appellants' to strike the complaint from the files, upon the ground that no order of court had been made permitting an action to be brought by plaintiff on behalf of himself and others similarly situated.

Section 12, Mills' Ann. Code, provides: "When the parties are numerous and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all, and the court may make an order that the action be so prosecuted or defended."

The Code provision as to an order by the court, above recited, is not mandatory.  It is not jurisdictional.  The effect of the order denying the motion to strike the complaint from the files, was to per-

mit the action to be prosecuted in the form in which it had been commenced.

There was no error in the ruling.

5. Appellants, in their third defense, averred that section 533, Mills' Ann. Stats., approved March 25, 1885, "is not, and never was, a law of the state of Colorado, nor was the same ever enacted and signed in the manner prescribed by the constitution of the state of Colorado for the following reasons, to wit:"

Then follow allegations specifying wherein the mandatory requirements of the constitution had not been complied with in the passage of the law referred to.

The reply to this defense was: "For a reply to the third alleged defense of said defendants, plaintiffs say that, as to the matters and things therein set forth, they have not, and cannot obtain sufficient knowledge or information upon which to base a belief."

The motion of appellants for judgment on the pleadings upon the ground that there was no reply to this defense, was overruled. Error is assigned upon this ruling.

The contention of appellants is, that the reply being in the form provided by section 56, Mills' Ann. Code, of matters which *were* presumptively within the knowledge of plaintiff, was no reply.

It cannot be held that the matters alleged in the third defense *were* presumptively within the knowledge of plaintiff, and, therefore, the reply was good, under section 56, Mills' Ann. Code.

Aside from this, the failure to reply to the affirmative material allegations of the answer is an admission of such allegations.

This is the basis upon which the motion for judgment on the pleadings was predicated.

"In *Peckham v. The People,* 32 Colo. 140, it was expressly said that it is not within the power of counsel to enter into a stipulation, the effect of which will render the law void, and the court will not consider admissions of parties or their counsel that the law has not been passed in accordance with the mandatory requirements of the constitution, or admissions of facts as to the contents of the legislative journal."

*Anderson v. Grand Valley Irr. District,* decided by this court January 8, 1906; see, also, *Marean v. Stanley,* 21 Colo. 43.

The rule announced in the above cases applies with equal force to admissions of parties or counsel by pleading, and, as said in the Anderson case, *supra,* "This is the sort of question which the court will *sua sponte* raise."

There was no error in the ruling.

6. It is said that the court erred in allowing the stock ledger of the insolvent bank to be introduced in evidence to prove that appellants were stockholders of the bank, in that the stock ledger was not such a book as is required to be kept by the officers of a corporation by 1 Mills' Ann. Stats., section 508.

The stock ledger has been certified to this court, and we have examined it. It seems to be, in all respects, similar to the stock ledger passed upon by the court in *Zang v. Wyant, supra.* It was identified and supported by the testimony of the ex-cashier of the bank, to the same effect as the book passed upon in *Zang v. Wyant* was identified and supported by Mr. Root. We think the book, with the testimony supporting it, was competent and sufficient evidence to prove that appellants were stockholders of the insolvent bank.

7. The court found that appellants were liable to the limit of the liability imposed by the statute,

to wit, "double the amount of the par value of the stock," and, in its decree, awarded judgment against each appellant for that amount, with interest thereon from January 6, 1902, to the date of the rendition of the decree.    The maximum liability imposed by the statute is "double the amount of the par value of the stock."    This is the limit of recovery by creditors.—*Zang v. Wyant, supra;* Clark & Marshall, vol. 3, page 2515; *Richmond v. Irons,* 121 U. S. 27, 64.

The allowance of interest was error.

This error will not necessitate a reversal of the judgment.

The order will be, that the judgment be modified as to all appellants, limiting the amount of the judgment against each appellant to an amount equal to "double the amount of the par value of the stock" held by each appellant respectively, as found by the trial court.    That the cause be remanded with directions to the trial court to modify the judgment as herein indicated, *nunc pro tunc,* and that the judgment in all other respects be affirmed.

*Modified and affirmed.*

Decision *en banc.*

Mr. Justice Campbell not sitting.